UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY, L.P., | ) ) ) | CIV. 10-4110-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | ORDER DENYING DEFENDANTS' MOTION FOR A STAY AND MOTION TO STRIKE PLAINTIFF'S |
| NATIVE AMERICAN TELECOM, LLC; B.J. JONES, in his official capacity as Special Judge of Tribal Court; and CROW CREEK SIOUX TRIBAL COURT, | ) ) ) ) ) ) | MEMORANDUM AND GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |
| Defendants. | ) | |

Defendants, Native American Telecom (NAT) and the Crow Creek Sioux Tribal Court (CCSTC), move for an order staying this action until CCSTC determines if it has jurisdiction over this matter. Plaintiff, Sprint Communications Company, resists the motion and moves for a preliminary injunction to enjoin CCSTC from hearing this matter. Defendants also move to strike Sprint's memorandum in support of its motion for a preliminary injunction because it violates the local rules of civil procedure.

## BACKGROUND

The facts viewed in the light most favorable to NAT pertinent to this order are as follows: Sprint provides nationwide long-distance telephone services and is known under the telecommunications regulatory framework as an interexchange carrier (IXC). Sprint delivers long-distance

telecommunication calls to a local exchange carrier (LEC) for termination. Sprint pays the LEC a terminating access charge based on the LEC's filed tariff.

In 1997, the Crow Creek Sioux Tribe established the Crow Creek Sioux Tribal Utility Authority (Tribal Utility Authority). In October of 2008, the Tribal Utility Authority authorized NAT, a tribally owned limited liability company organized under the laws of South Dakota, to provide telecommunications service on the Crow Creek Reservation subject to the tribe's laws. Under the telecommunications regulations, NAT is known as an LEC because NAT terminates calls on the reservation. NAT then filed two access service tariffs for telephone traffic on the reservation, one with the FCC for interstate traffic and one with the Tribal Utility Authority for intrastate traffic within the reservation.

Shortly after NAT began operating as an LEC, Sprint refused to pay NAT's terminating access tariffs. In March of 2010, NAT filed a complaint against Sprint with the Tribal Utility Authority seeking enforcement of its access tariffs. On March 29, 2010, the Tribal Utility Authority entered an ex parte order finding that Sprint's refusal to pay NAT's tariffs violated the "filed rate doctrine." In response, Sprint filed a complaint with the South Dakota Public Utilities Commission (SDPUC) to enjoin NAT's collection efforts with

respect to interstate traffic.[1] On July 12, 2010, NAT filed a complaint in CCSTC to collect the unpaid access service tariffs. CCSTC has directed the parties to brief the tribal court jurisdiction issue and has not determined whether it has jurisdiction over this matter. On August 16, 2010, Sprint filed a complaint with this court to enjoin CCSTC from further proceedings.

## DISCUSSION

### I. Motion to Strike

Defendants move to strike Sprint's memorandum in support of its motion for a preliminary injunction for failure to seek leave before filing an overlength brief. Defendants request that this court strike pages 26-47 of Sprint's brief.

Local Civil Rule 7.1(B)(1) requires that a brief not exceed 25 pages *or* 12,000 words unless the court granted prior approval. If the brief does exceed 25 pages, it must be accompanied by a certificate stating that the brief complies with the type-volume limitation. D.S.D. Civ. LR 7.1(B)(1).

Sprint's brief in support of its motion for a preliminary injunction is 47 pages and contains 10,656 words. Because the brief is under the 12,000 word limit, Sprint did not need prior approval to file an overlength brief, but it should have filed a word count compliance certificate. D.S.D. Civ. LR 7.1(B)(1).

---

[1] The parties are currently briefing the issue of whether the SDPUC has jurisdiction over NAT in the matter pending before the SDPUC.

Sprint failed to comply with Local Rule 7.1(B)(1). After receiving notice of its failure, Sprint rectified the situation by filing a "Word Count Compliance Certificate." Docket 42. While the court prefers that parties comply with the local rules without prompting by the opposing party, NAT and CCSTC suffered no prejudice because Sprint failed to file a word count certificate. To strike almost half of Sprint's brief would work an injustice against Sprint and preclude a full resolution of the issues pending before this court. Defendants' motion to strike is denied.

**II. Defendants' Motion for a Stay and Exhaustion of the Jurisdiction Question in Tribal Court**

Before a federal court grants preliminary relief, it must have jurisdiction over the matter. *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1422 (8th Cir. 1996). Whether a tribal court has adjudicative authority over a non-tribal member presents a federal question. *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S. Ct. 2709, 2716-17 (2008) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987)). Federal law governs the outcome. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852 (1985). Accordingly, the question falls under this court's "arising under federal law" jurisdiction in 28 U.S.C. § 1331. *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 483 (1999).

The Supreme Court has long recognized that Indian tribes are " 'distinct, independent political communities.' " *Plains Commerce*, 128 S. Ct. at 2718

(quoting *Worcester v. Georgia*, 31 U.S. 515, 559 (1832)). "Tribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their development." *Iowa Mut.*, 480 U.S. at 14-15 (internal citation omitted). Given these long-held policy considerations, the doctrine of tribal exhaustion requires parties to exhaust their case in tribal court before seeking relief in a federal court, including questions of jurisdiction. *Nevada v. Hicks*, 533 U.S. 353, 369 (2001). Exhaustion is appropriate because " 'Congress is committed to a policy of supporting tribal self-government . . . [which] favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal basis for the challenge.' " *Neztsosie*, 526 U.S. at 484 (alteration in original) (quoting *Nat'l Farmers Union*, 471 U.S. at 856).

While the policy considerations favoring tribal courts are strong, the tribal court exhaustion rule is only a prudential rule based on comity. *Strate v. A-1 Contractors*, 520 U.S. 438, 450-51 (1997) (citing *Nat'l Farmers Union*, 471 U.S. at 857); *see also Iowa Mut.*, 480 U.S. at 16 n.8 ("[E]xhaustion is required as a matter of comity, not as a jurisdictional prerequisite."). Generally, when the tribal court has jurisdiction, however, comity requires that tribal courts handle the matter. *Bruce H. Lien*, 93 F.3d at 1420.

In *National Farmers Union*, the Supreme Court recognized three exceptions to the tribal exhaustion doctrine: (1) where "tribal jurisdiction is

motivated by a desire to harass or is conducted in bad faith;" (2) where the case "is patently violative of express jurisdictional prohibitions;" and (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." 471 U.S. at 856-57. The Supreme Court has also recognized that "[a]ny generalized sense of comity toward nonfederal courts is obviously displaced by the provisions of preemption." *Neztsosie*, 526 U.S. at 485. A federal preemption defense, however, affects tribal exhaustion only in rare situations where "statutory provisions for conversion of state law claims to federal ones and removal to federal courts express congressional preference for a federal forum." *Id.* at 485 n.7

The question here is, with regard to claims arising under an interstate tariff, whether Congress expressed a preference for a federal forum both by federal preemption of claims and by limiting jurisdiction over a claim to a federal forum.

A.   **Claim Preemption**

Both Sprint and NAT seek relief under the FCA, specifically under 47 U.S.C. §§ 201, 203, and 206. The Supreme Court has concluded that the Interstate Communications Act, the FCA's predecessor,[2] "was an exertion of

---

[2] In 1887, Congress passed the Interstate Commerce Act (ICA). 24 Stat. 379. Congress amended the ICA in 1910 to include regulation over telephones. 36 Stat. 539. In 1934, Congress passed the FCA. 47 U.S.C. § 151. In enacting the FCA, Congress heavily relied on the ICA. *AT&T Co. v. Central Office Tele., Inc.*, 524 U.S. 214, 222 (1998).

6

Congress of its authority to bring under federal control the interstate business of telegraph companies and therefor was an occupation of the field by Congress which excluded state action." *Postal Tel.-Cable Co. v. Warren Godwin Lumber Co.*, 251 U.S. 27, 31 (1919) (citations omitted). More recent courts have agreed: "The Supreme Court has held that the establishment of this broad scheme [the FCA] for the regulation of interstate service by communication carriers indicates an intent on the part of Congress to occupy the field to the exclusion of state law." *Ivy Broadcasting Co. v. AT&T Co.*, 391 F.2d 486, 490 (2d Cir. 1968).

The Supreme Court has held that the federal tariff laws preempt state-law causes of action. *See AT&T Co. v. Central Office Tele., Inc.*, 524 U.S. 214, 226-27 (1998) (holding that 47 U.S.C. § 203, the "filed rate doctrine," preempted state-law claims for breach of contract and tortious interference with a contract). From the FCA's sweeping claim preemption, the Supreme Court has concluded that the FCA is "a comprehensive scheme for the regulation of interstate communication." *Benanti v. United States*, 355 U.S. 96, 104 (1957). If a cause of action arises under an FCA provision, it is governed by federal law. *MCI Telecomms. Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992).

As in *Neztsosie*, here Congress has determined that the regulation of interstate tariffs is governed exclusively by federal law, and state-law or tribal-law claims regarding these interstate tariffs are completely preempted.

**B.     Federal Jurisdiction**

While Sprint and NAT seek relief under 47 U.S.C. §§ 201, 203, and 206, it is § 207 that gives parties aggrieved under the FCA the right to sue and enforce their rights. 47 U.S.C. § 207; *see also Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*, 550 U.S. 45, 55 (2007) (reasoning that it is plain that parties aggrieved under the FCA may bring suit to enforce their rights under § 207). Section 207 provides:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

The question is whether § 207 vests exclusive jurisdiction in federal district courts and the FCC. While the Eighth Circuit Court of Appeals has not addressed this issue, the Ninth Circuit did in *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899 (9th Cir. 2002). In *Coeur d'Alene*, an Indian tribe created the National Indian Lottery and entered into a management contract between the tribe and a non-tribal gaming company to allow people living off the

reservation to participate telephonically in the lottery. *Id.* at 902. After the tribe negotiated with AT&T to establish toll-free telephone service for callers in states that operate their own state-run lotteries, several state attorneys general contacted AT&T and stated that furnishing interstate toll-free service would violate federal and state laws. *Id.* After receiving these letters, AT&T withdrew from the plan. *Id.* The tribe filed suit in tribal court. *Id.* at 903. Among its claims, the tribe alleged FCA violations, specifically under §§ 201(a), 202, 206 and sought relief under § 207. *Id.* at 904-05. The tribal court ruled against AT&T and the tribal appellate court affirmed. *Id.* at 903. AT&T then sought relief in the federal district court and challenged the tribal court's jurisdiction. *Id.* The district court found the tribal court's decision to be erroneous as a matter of federal law and denied as moot AT&T's motion for judgment that the tribal court lacked jurisdiction. *Id.* The tribe appealed. *Id.*

The Ninth Circuit reasoned that district courts may not relitigate a tribal court's decision unless the tribal court lacked jurisdiction or the judgment should be denied comity for some other reason. *Id.* at 904. As a result, the Ninth Circuit engaged in a de novo review of whether the tribal court in fact had jurisdiction and answered in the negative:

> By its express language, § 207 *establishes concurrent jurisdiction in the FCC and federal district courts only*, leaving no room for adjudication in any other forum–be it state, tribal, or otherwise. The Tribe had no recourse to its own courts for vindication of its FCA-based claim and–like any other plaintiff–

9

> could choose only between filing a complaint with the FCC or suing AT & T in federal district court.
>
> Because exclusive jurisdiction rested in either of the two statutorily-provided federal fora, the Tribal Court lacked jurisdiction to entertain the Tribe's claim.

*Id.* at 905 (emphasis added).

This court finds the logic and reasoning of the Ninth Circuit in *Coeur d'Alene* to be persuasive. The FCA and the ICA were adopted for the purpose of bringing the telecommunications field under one federal regulatory scheme. It logically follows that Congress intended to have that regulatory scheme consistently interpreted in a federal forum.

"The issue, then, is whether Congress would have chosen to postpone resolution of the enjoinable character of this tribal-court litigation, when it would not have postponed federal resolution of the functionally identical issue pending in a state court." *Neztsosie*, 526 U.S. at 485. Here, as in *Neztsosie*, the court finds that Congress has expressed a preference for a federal forum both by preempting all non-federal substantive law claims regarding interstate tariffs and by limiting the forum where such a claim can be brought to a federal forum. Thus, the "generalized sense of comity toward nonfederal courts" is outweighed here by the congressional provisions for preemption and exclusive jurisdiction in a federal forum. *See id.* at 485-86.

This conclusion is consistent with the Eighth Circuit opinion of *Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094 (8th Cir. 1989),

and the United States Supreme Court opinion of *Nevada v. Hicks*, 533 U.S. 353 (2001). In *Blue Legs*, the Eighth Circuit found that Congress placed jurisdiction for claims under the Resource Conservation and Recovery Act in federal courts and that the tribal court did not have jurisdiction to hear the case. 867 F.2d at 1097-98. As a result, the court found that exhaustion of tribal remedies was not necessary. *Id.* In *Hicks*, the Supreme Court found that no provision in federal laws granted tribal courts jurisdiction over § 1983 claims and that tribal courts did not have jurisdiction to hear the case. 533 U.S. at 367-68. As a result, the Court found that because the tribal court lacked jurisdiction over § 1983 claims, "adherence to the tribal exhaustion requirement in such cases 'would serve no purpose other than delay,' and is therefore unnecessary." *Id.* at 369.

Defendants argue that § 207 uses "may" and, therefore, Congress did not clearly limit jurisdiction to only federal courts or the FCC. *See* 47 U.S.C. § 207 ("Any person claiming to be damaged by any common carrier subject to the provisions of this chapter *may* either make complaint to the Commission as hereinafter provided for, or *may* bring suit . . . in any district court . . . ." (emphasis added)). Sprint, relying on *Neztsosie*, contends that the use of "may" means that litigants must choose either federal court or the FCC.

The Ninth Circuit Court of Appeals in *Coeur d'Alene* held that in § 207, Congress left "*no room* for adjudication in any other forum–be it state, tribal, or

11

otherwise." 295 F.3d at 905 (emphasis added). The Ninth Circuit's reasoning is in line with other circuits that have interpreted Congress's choice of language in § 207.[3] Thus, this court concludes that "may" refers to choosing between either a federal district court or the FCC.

Defendants further argue that the FCC supports tribal sovereignty in the telecommunications realm. The FCC has expressed concern for improving telephone and internet services in Indian country.[4] In its *Indian Telecom Initiatives* booklet, the FCC stated that it "is committed to facilitating increased access to telecommunications in Indian Country." Docket 46-4 at 1. The FCC has listed the benefits of increased telecommunications services on tribal lands, including access to education and employment opportunities, public safety services, and government programs. *See* Docket 46-4. The agency has also pledged its support in securing services for tribal lands: "In a series of

---

[3] *See, e.g.*, *Mexiport v. Frontier Comms. Servs., Inc.*, 253 F.3d 573, 575 (11th Cir. 2001) (reasoning that § 207 "allows a complainant to file a complaint with the FCC or in federal district court but not both" (citations omitted)); *Stiles v. GTE, Sw. Inc.*, 128 F.3d 904, 906-07 (5th Cir. 1997) (same); *Cincinnati Bell Tel. Co. v. Allnet Comms. Serv., Inc.*, 17 F.3d 921, 923-24 (6th Cir. 1994 (same).

[4] *See, e.g.*, Fed. Commc'n Comm'n, Expanding Telecommunications Access in Indian Country, Docket 46-5; Fed. Commc'n Comm'n, FCC Establishes Office of Native Affairs and Policy, FCC News Release, Aug. 12, 2010, Docket 47-1; Fed. Commc'n Comm'n, Statement of Commissioner Michael J. Copps, Docket 47-2; Fed. Commc'n Comm'n, Commissioner Michael J. Copps Applauds the Appointment of Geoffrey Blackwell to Lead New Initiatives for Indian Country, FCC News Release, June 22, 2010, Docket 47-3.

steps undertaken since 1998, the FCC, in consultation with tribal leaders and other government agency officials, has sought to address concerns about barriers to telecommunications service deployment and subscribership in Indian Country. Concerns addressed include geographic isolation, lack of information, and economic obstacles." Docket 46-5 at 9.

The FCC has further acknowledged that Indian tribes are sovereign and that the FCC "has a trust responsibility to and a government-to-government relationship with recognized tribes." Docket 46-5 at 18. "The FCC recognizes the rights of tribal governments to set their own communications priorities and goals for the welfare of their membership." Docket 46-5 at 3. The FCC has clearly expressed a need for greater telecommunications access in Indian country and a respect for tribal sovereignty in choosing the services best suited for that tribe. But the FCC has never stated that tribal courts have jurisdiction over interstate tariff claims brought under § 207, because Congress, not the FCC, has the power to determine where jurisdiction for these claims lie.

Congress has not only occupied the telecommunications field for interstate tariffs, but has also chosen to preempt state and tribal court jurisdiction for interstate tariff claims brought under § 207. Like *Hicks* and *Neztsosie*, because Congress has "expressed an unmistakable preference for a

federal forum," *Neztsosie*, 526 U.S. at 484, there is no need to exhaust the jurisdictional issue in CCSTC.

### III. The Preliminary Injunction Motion

Federal Rule of Civil Procedure 65(a) allows a court to issue a preliminary injunction. "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 845 (8th Cir. 2003) (internal citations omitted). The Eighth Circuit has established four factors for determining whether to issue a preliminary injunction: (1) the threat of irreparable harm by the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

No single factor is dispositive. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987). But the two most critical factors are the probability that the movant will succeed on the merits and whether the movant will suffer irreparable harm if the preliminary injunction is not granted. *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976). A district court has wide latitude to issue a preliminary injunction, and the

appellate court reviews a preliminary injunction decision under an abuse of discretion standard. *See id.*

### A. Probability of Success on the Merits

Sprint seeks a preliminary injunction to enjoin CCSTC from hearing this case. As stated above, this court has determined that CCSTC does not have jurisdiction over this matter. Accordingly, this factor weighs heavily in favor of granting the preliminary injunction.

### B. The Threat of Irreparable Harm

The movant for a preliminary injunction must show a threat of irreparable harm, and the failure to do so is sufficient grounds for a court not to grant a preliminary injunction. *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). The movant need only show the possibility of harm and not actual harm. *See, e.g., United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations . . . and, of course, it can be utilized even without a showing of past wrongs.").

Sprint argues that it has met its burden because it has shown the likelihood of success on the merits of this action. The Eighth Circuit has held that irreparable harm can be found if the probability of success on the merits is met. *Lenox Labs.*, 815 F.2d at 505 ("The court correctly noted that it could

presume irreparable injury from finding of probable success" on the merits.). This factor weighs in favor of Sprint.

### C. Balance Between the Irreparable Harm and Injury of Granting the Injunction

Sprint argues that NAT and CCSTC will not suffer any harm if this court issues a preliminary injunction because they can pursue their claims against Sprint in the proper forum and CCSTC can focus its attention on matters where it has jurisdiction. Defendants respond that CCSTC would be precluded from determining its own jurisdiction and interpreting its own laws, intruding on the Crow Creek Tribe's sovereignty and sovereign immunity.

Tribes are sovereign nations and courts have repeatedly recognized the need to allow tribal courts to determine disputes first, and wrongly interfering with a tribe's authority to determine its jurisdiction does irreparable harm to a tribe's sovereignty. But the Supreme Court in *Hicks*, *Strate*, and *Neztsosie*, and the Eighth Circuit in *Bruce H. Lien* and *Blue Legs*, have held that the doctrine of tribal court exhaustion must give way when Congress has preempted tribal court jurisdiction. As stated above, CCSTC does not have jurisdiction in this case because § 207 has preempted state and tribal jurisdiction for interstate tariff claims arising under § 207. Thus, Sprint will also experience irreparable harm if forced to exhaust the issue in CCSTC. These competing irreparable harms that would result by an incorrect holding reveal that this factor weighs both in favor of, and against, granting the preliminary injunction.

### D. Public Interest

Sprint argues that many traffic-pumping cases are pending in federal district courts across the country and that these cases should be uniformly decided by the federal courts. Defendants respond that divesting CCSTC of jurisdiction would impede the Crow Creek Tribe's sovereignty.

As stated above, there is a strong policy favoring tribal self-government. But this policy ends when CCSTC lacks jurisdiction to hear the matter before it. *Nat'l Farmers Union*, 471 U.S. at 856-57. Litigation, no matter the forum, is expensive. Both parties will incur considerable expense if CCSTC first hears this action and then this court, another federal district court, or the FCC also hears this case. Because Congress chose to vest jurisdiction for interstate tariff claims with the federal courts and the FCC, the public is best served when the action is heard in federal court or the FCC in the first instance.

The irreparable harm, success on the merits, and the public interest factors all weigh in favor of granting the preliminary injunction. The balance of the harms factor weighs both in favor of and against the preliminary injunction. The court finds that Sprint is entitled to a preliminary injunction.

## CONCLUSION

The motion to strike is denied because defendants suffered no prejudice from Sprint's failure to comply with the local rules. The tribal exhaustion rule is inapplicable because CCSTC does not have jurisdiction over this matter.

Because Congress has preempted tribal court jurisdiction for interstate tariff claims brought under § 207, and after weighing the *Dataphase* factors, this court grants the preliminary injunction and denies the motion for a stay. Accordingly, it is

ORDERED that NAT's motion to strike (Docket 37) is denied, defendants' motion for a stay (Docket 14) is denied, and Sprint's motion for a preliminary injunction (Docket 20) is granted.

Dated December 1, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE