UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY, L.P., | ) ) ) | CIV. 10-4110-KES |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | ORDER |
| NATIVE AMERICAN TELECOM, LLC, and CROW CREEK SIOUX TRIBAL COURT, | ) ) ) ) ) | |
| Defendants. | ) | |

On January 12, 2011, defendant Native American Telecom (NAT) moved for a preliminary injunction to enjoin plaintiff, Sprint Communications Company, from withholding interstate switched access charges that NAT has already billed or will bill to Sprint in the future. Shortly before the preliminary injunction hearing on March 3, 2011, NAT moved for a protective order for discovery and Sprint moved to compel discovery from NAT. The parties had not completed briefing on these discovery motions before the March 3 hearing and, upon argument by the parties that this discovery was crucial to resolving the preliminary injunction motion, the court agreed to resolve the discovery disputes before addressing the preliminary injunction motion. The parties have now briefed

the two discovery motions.[1] NAT's motion for a protective order is denied. Sprint's motion to compel is denied in part and granted in part.

## DISCUSSION

**I.     NAT's Motion for a Protective Order**

    **A.     Thomas Reiman's Deposition**

NAT seeks a protective order to quash Sprint's notice of deposition of Thomas Reiman and seeks its reasonable attorneys' fees and expenses incurred in bringing this motion.

A motion for protective order is governed by Rule 26: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . ." Fed. R. Civ. P. 26(c)(1)(A). Rule 26 allows the court to craft relief besides prohibiting the requested discovery outright. Fed. R. Civ. P. 26(c)(1)(B) ("The court may, for good cause, . . . specify[] terms, including time and place, for the disclosure or discovery . . . .").

The party seeking a protective order has "the burden to demonstrate good cause for issuance of the order and that his claim of harm must be based on more than stereotypical and conclusory statements."

---

[1] While both parties filed memorandums in opposition to the opposing party's motion, neither Sprint nor NAT filed a reply brief for its discovery motion.

*Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 926 (8th Cir. 1999) (citing *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)). The court must consider "the relative hardship to the non-moving party should the protective order be granted." *Gen. Dynamics*, 481 F.2d at 1212 (citing *United States v. Kordel*, 397 U.S. 1, 4-5 (1970)). "[B]ecause discovery rules should 'be construed to secure the just, speedy, and inexpensive determination of every action . . . judges should not hesitate to exercise appropriate control over the discovery process.' " *Miscellaneous Docket Matter #1*, 197 F.3d at 927 (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). The appellate court only reviews a district court's discovery order for an abuse of discretion. *Id.*

NAT argues that Sprint's notice is improper because it does not specify the areas of inquiry for Reiman's deposition. NAT also contends that Sprint did not designate Reiman as one of its two preliminary injunction hearing witnesses and Sprint's attempt to depose Reiman violates the parties' Interim Joint Rule 26(f) Report.

NAT reads a heightened notice requirement into Rule 30(b)(1) by arguing that the notice was insufficient because "a few day's [sic] notice to prepare Reiman for what could be a wide-ranging deposition (into unspecified areas of inquiry) does not constitute 'reasonable notice' and negatively impacts NAT's ability to adequately defend this case and prepare

the *actual witnesses* NAT has designated for the preliminary injunction hearing." Docket 90 at 5 (emphasis in original). Sprint responds that Reiman has relevant information to NAT's claim that it faces imminent bankruptcy if the preliminary injunction is not granted because Reiman assists in managing NAT's finances. Sprint further argues that the parties had already informally agreed to Reiman's deposition: "In all previous discussions . . . NAT had always indicated that Reiman would be one of its witnesses. . . . Furthermore, as Reiman is intimately familiar with the business of NAT and has previously testified as a witness before the Court, a deposition is not outside the bounds of Reiman's capabilities." Docket 93 at 4-5.

Even though NAT argues that Sprint's notice was insufficient, it does not dispute that Reiman is a proper deponent: "NAT will not object to Sprint taking Reiman's deposition after reasonable notice and with adequate specificity as to Sprint's desired areas of inquiry." Docker 90 at 4. Reiman has testified in this case in a prior hearing on Sprint's preliminary injunction motion and should be intimately acquainted with NAT's business. Now that Sprint has clarified that Reiman will be deposed about NAT's finances and because Reiman will be deposed after the March 3 hearing, NAT has no remaining objections to Sprint deposing Reiman. Accordingly, NAT's motion for a protective order is denied.

### B. Attorneys' Fees

NAT moves for "reasonable attorneys' fees and expenses incurred in bringing this motion." Docket 89 at 1. Rule 37(a)(5) applies to fees and expenses for bringing a Rule 26(c) motion. Fed. R. Civ. P. 26(c)(3). Because NAT's motion was denied, it is not entitled to expenses. Fed. R. Civ. P. 37(a)(5)(B). Further, Sprint did not move for expenses in the event that the court denied NAT's motion, a possibility under Rule 37(a)(5)(B), so an award of expenses is inappropriate regarding this discovery dispute.

## II. Motion to Compel Discovery

Sprint moves to compel NAT's answer to Sprint's interrogatory Number 7: "Identify all interexchange carriers whom NAT has invoiced under any of its tariffs, including the name of the interexchange carrier, the amounts invoiced, and the payments received, if any." Docket 92 at 2. NAT refused to answer:

> This Interrogatory is objected to as seeking information that is protected by the attorney-client privilege and the work product doctrine. This Interrogatory is further objected to as being overly broad and unduly burdensome. This Interrogatory is further objected to as seeking information that is beyond the permissible scope of discovery and that is not reasonably calculated to lead to the discovery of admissible evidence.

Docket 92 at 2.

NAT first argues that Sprint's relief should be denied because Sprint failed to abide by the local and federal rules. Before seeking judicial relief in

5

discovery, both the federal and local rules require the moving party to certify that the movant conferred in good faith to resolve the dispute before filing a motion to compel. *See* Fed. R. Civ. P. 37(a)(1); D.S.D. Civ. L.R. 37.1. Sprint failed to comply with this rule because it did not certify to the court that it had attempted, in good faith, to resolve this discovery dispute with NAT before submitting its motion to compel. While the court prefers that parties comply with the local and federal rules, because Sprint's motion to compel concerns a preliminary injunction, the court will decide Sprint's motion on the merits.

NAT claims that the attorney-client privilege protects the information Sprint seeks. "The attorney-client privilege extends only to confidential communications made for the purpose of facilitating the rendition of *legal* services to the client." *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir. 1984) (citing *In re Malone*, 655 F.2d 882, 886 (8th Cir. 1981)). "[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection." *Hollins v. Powell*, 773 F.2d 191, 197 (8th Cir. 1985) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc)).

Even though NAT generally asserted the attorney-client privilege in refusing to answer Interrogatory Number 7, it makes no argument on how the privilege exists. The information sought is not a communication between

NAT and its attorney, but rather bills between NAT and other interexchange carriers (IXCs). Bills are not generated to render legal advice. Thus, NAT has not met its burden to establish that the attorney-client privilege protects the information.

NAT also contends that the work product doctrine protects the information. The federal rules provide that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party resisting discovery bears the burden in proving that the material sought is protected by the work product doctrine. *Rabushka ex rel United States v. Crane Co.*, 122 F.3d 559, 566 (8th Cir. 1997).

NAT has made no argument as to how the requested information was prepared in anticipation of litigation. Instead, the information appears to be bills that one would expect to find in a telecommunications company's usual business records. Thus, NAT has not met its burden to prove the information sought is protected by the work product doctrine.

NAT further refused to answer Interrogatory Number 7 on the ground that the information sought was overly broad and disclosure would be unduly burdensome. In its brief opposing Sprint's motion to compel, NAT

makes no further argument regarding how the information sought is unduly burdensome. NAT should have billing records in its corporate files and was able to produce some financial information at the March 3 hearing. The information sought is neither unduly burdensome nor overly broad.

NAT claims that the information sought is irrelevant because "this preliminary injunction hearing is limited to a dispute between *Sprint and NAT* for the payment of interstate switched access fees." Docket 100 at 4. NAT's alleged irreparable harm is that it will become bankrupt if Sprint does not pay NAT's bills. Because NAT has directly put its financial viability at issue, evidence of NAT's other revenue sources is relevant. Furthermore, if the court were to grant NAT's preliminary injunction, the court would need to fashion a fair per-minute rate that NAT could charge Sprint. Information showing what rates NAT charges other IXCs would be relevant to this inquiry.

NAT further contends that the information sought is confidential financial information and urges the court to conduct an in camera review if Sprint's motion is granted. Docket 100 at 7 n.4 ("[T]his Court may (and perhaps should, given the highly charged relationship that has developed between the parties) examine the documents *in camera* in deciding this

threshold question [whether the documents are confidential financial records].").[2]

Rule 26 allows a court to fashion how commercial information is revealed in discovery. Fed. R. Civ. P. 26(c)(1)(G). Courts employ a three-part test for discovery information that allegedly falls under Rule 26(c)(1)(G). *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991). "First, the party opposing discovery must show that the information is a trade secret or other confidential research, development, or commercial information . . . and that its disclosure would be harmful to the party's interest in the property." *Id.* (quotation omitted). "The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* (citations omitted). Third, "[i]f the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information." *Id.* (citing *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)). If a district court does not afford the party resisting discovery the

---

[2] Without attributing the source, NAT quotes the reasoning in *In re Remington Arms Co.*, 952 F.2d 1029 (8th Cir. 1991) for this proposition: "On remand, the district court should afford Remington the opportunity to make a showing that the disputed documents contain trade secrets. It may (and probably should, given the highly charged relationship that has developed between the parties) examine the documents *in camera* in deciding this threshold question." *Id.* at 1032.

opportunity to show that the information is protected by Rule 26(c)(1)(G), the appellate court may find that the district court abused its discretion. *See id.* ("We conclude that in failing to provide Remington with the procedural protections afforded by Rule 26(c), the district court clearly abused its discretion.").

NAT asserts that the information sought in Interrogatory Number 7 is confidential financial information because Sprint seeks individual carrier minutes and individual carrier receivables. This information, according to NAT, "would (1) give Sprint a distinct competitive advantage in the telecommunications marketplace; (2) provide Sprint with information that would allow it to 'take' traffic away from other carriers and endow Sprint with a competitive advantage; and (3) provide Sprint with the 'sales receipts' of competitors who vie for an identical customer base." Docket 100 at 6.

NAT has made a threshold showing that the documents sought in Interrogatory Number 7 could be confidential financial information protected by Rule 26(c)(1)(G). Given the complex nature of this case, the court will conduct an in camera review of all documents NAT would produce to Sprint in response to Interrogatory Number 7, and determine if the documents should be produced to Sprint in their original form, if some information should be redacted, or if a protective order is necessary.

Accordingly, it is

ORDERED that defendant NAT's motion for a protective order (Docket 89) is denied and plaintiff's motion to compel (Docket 92) is denied in part and granted in part. NAT is to submit all documents that would be disclosed in response to Interrogatory Number 7 and a privilege log briefly explaining why each document contains confidential financial information to the court by **May 2, 2011**. Furthermore, the parties have until **April 26, 2011**, to depose Thomas Reiman. The transcript of his deposition is to be submitted to the court as soon as possible after the deposition.

Dated April 19, 2011.

>BY THE COURT:
>
>*/s/ Karen E. Schreier*
>KAREN E. SCHREIER
>CHIEF JUDGE