UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | 4:10-CV-04110-KES |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART SPRINT'S MOTION TO DISMISS |
| vs. | |
| CROW CREEK SIOUX TRIBAL COURT, NATIVE AMERICAN TELECOM, LLC., and B. J. JONES, in his official capacity as special judge of Tribal Court; | |
| Defendants. | |

Plaintiff, Sprint Communications Company, L.P., moves to dismiss in part Counts I and II of defendant Native American Telecom, LLC.'s (NAT) first amended counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Sprint also moves to dismiss in their entirety Counts V and VI of NAT's amended counterclaim pursuant to Rule 12(b)(6). NAT opposes the motion.

**BACKGROUND**

The pertinent, undisputed facts are as follows:

Sprint provides nationwide long-distance telephone services and is known under the telecommunications regulatory framework as an interexchange carrier (IXC). Sprint delivers long-distance calls to a local exchange carrier (LEC) for termination to end-users. Under the FCC's current

regulatory framework, Sprint pays the LEC a terminating access charge based on the LEC's interstate access tariff, which is filed with the FCC.

NAT is an LEC. NAT's interstate tariff number one, filed with the FCC, became effective on September 15, 2009. NAT's second interstate tariff became effective on November 30, 2010, and canceled and replaced NAT's tariff number one. NAT revised its tariff number two, and the revisions became effective on June 26, 2011.

NAT also operates a free conference calling system (used for conference calling, chat-lines, and similar services) in connection with Free Conferencing Corporation, which is owned by WideVoice. NAT has a conference call bridge located on the Crow Creek Sioux Reservation in South Dakota. A party using NAT's services does not pay NAT for the conference call but rather is assessed normal charges by the party's telecommunications provider. NAT then bills the telecommunications provider an access fee as defined in its interstate tariff. NAT's access charges billed to Sprint for conference calls are at issue here.

After paying two of NAT's bills for charges connected to conference calls, Sprint ceased paying NAT's terminating access tariffs because Sprint believed that NAT was involved in a traffic-pumping scheme, otherwise known as access stimulation, to generate traffic from free conference calls and chat services. On August 16, 2010, Sprint filed suit against NAT alleging a breach of the Federal Communications Act (FCA) and a state-law unjust enrichment claim. Docket 1.

On March 8, 2011, NAT amended its answer and asserted counterclaims against Sprint alleging a breach of contract and a collection action pursuant to

2

its tariffs, a breach of implied contract resulting from a violation of its tariffs, and a quantum meruit/unjust enrichment claim. NAT also sought declaratory relief. Docket 99.

On November 29, 2011, the FCC released its *Connect America Fund* final rule, which addresses access stimulation and traffic pumping. *See Connect America Fund; A National Broadband Plan for Our Future; Establishing Just and Reasonable Rates for Local Exchange Carriers; High-Cost Universal Service Support*, 76 Fed. Reg. 73830 (Nov. 29, 2011). The FCC also created a transitional framework for VoIP intercarrier compensation. *Id.* at 73833. On December 27, 2011, this court issued an order directing the parties to discuss what effect, in any, the FCC's *Connect America Fund* final rule had on the issues presented in this case. Docket 128. Then, on February 22, 2012, this court issued an order discussing the final rule and determined that it did not apply retroactively. Docket 141 at 9-11 ("Thus, the final rule is inapplicable to the time period before the final rule became effective."). As part of the same order, this court granted Sprint's then-pending motion to stay this proceeding and referred three issues to the FCC for resolution. *Id.* at 25. This court also directed the parties to issue periodic updates describing the status of the FCC proceeding. This court received these updates over the next two years, although the status of the FCC referral remained unchanged since November 2012. *Compare* Docket 154 *with* Docket 163. Because of the limited progress on the FCC referral, a telephonic status conference was held on July 23, 2014. *See* Docket 164.

3

The parties stated that they had been engaged in litigation before the South Dakota Public Utilities Commission (SDPUC). Docket 169 at 5. NAT was granted a certificate of authority by the SDPUC to provide certain telecommunications services in South Dakota. Based on the results of the SDPUC litigation and the lack of action by the FCC during the period of the stay, the parties discussed whether some of the disputes in this case remained viable. *Id.* at 8-10. The court proposed entering an order that lifted the stay, withdrew the issues that had been referred to the FCC, and established deadlines for the parties to amend the complaint, counterclaims, and to file any motions to dismiss. *Id.* at 12. The court also stated that it would rule on any motions to dismiss based on a statute of limitations defense and that a new referral of issues to the FCC could then be discussed. *Id.* With the parties in agreement, a formal order was issued that same day. *See* Docket 168.

Sprint did not amend its complaint. NAT amended its counterclaim on September 9, 2014, and added a number of allegations that arose during the period of the stay and FCC referral. Docket 172. NAT also seeks further declaratory relief and has asserted a state-law abuse of process claim. On October 1, 2014, Sprint filed the pending motion to dismiss. Docket 181.

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of a counterclaim if the counter-claimant has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *United States v. Harvey*, No. Civ. 13-4023, 2014 WL 2455533, at *1 (D.S.D. Jun. 2, 2014). When reviewing a motion to dismiss under Rule

4

12(b)(6), the court accepts as true all factual allegations in the counterclaim and draws all reasonable inferences in favor of the claimant. *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012)). "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court determines plausibility by considering only the materials in the pleadings and exhibits attached to the counterclaim, drawing on experience and common sense and viewing the counterclaimant's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

## DISCUSSION

### I.   Factual Developments

The well-pleaded facts set forth in NAT's amended counterclaim are as follows:

In 2010, NAT applied to the SDPUC to obtain a certificate of authority to provide intrastate interexchange access services that originate and terminate on the Crow Creek Sioux Reservation. Docket 172 at ¶ 39. Sprint intervened and contested NAT's application. *Id.* at ¶ 40. Sprint obtained discovery from

5

NAT related to NAT's financial information, billing and regulatory documents, and deposed the president of NAT and president of Free Conferencing Corporation (Free Conferencing). *Id.* at ¶ 45. This information revealed that NAT began billing Free Conferencing for end user fees in 2011. *Id.* at ¶ 46. NAT had not previously billed Free Conferencing for these fees until it determined how Free Conferencing should be treated under NAT's tariffs. *Id.* Free Conferencing has regularly paid NAT for its access services since then. *Id.*

As part of NAT's original counterclaim, it asserted a claim for damages based on Sprint's nonpayment of access fees due under NAT's then-existing interstate tariffs. *Id.* at ¶ 28. Pursuant to those tariffs, NAT had regularly submitted invoices to Sprint, which Sprint refused to pay beginning in March 2010. *Id.* at ¶ 22. Then in August 2011, NAT amended its interstate tariff with the FCC again and reduced its switched access rates. *Id.* at ¶ 48. Sprint has continued to withhold payment for access services provided by NAT under this tariff as well. *Id.*

Also in 2011, a district court in Virginia issued an opinion following a bench trial in which Sprint was a party. *Id.* at ¶ 30 (citing *Cent. Tel. Co. of Virginia v. Sprint Commc'ns of Virginia*, 759 F. Supp. 2d 789 (E.D. Va. 2011)). The case involved breach of contract allegations brought against Sprint by 19 LECs. *Id.* The district court ruled against Sprint, and the decision was subsequently affirmed in 2013 by the Fourth Circuit Court of Appeals. *Id.*[1]

---

[1] Although not provided by NAT, the citation to the Fourth Circuit's opinion is: *Cent. Tele. Co. of Virginia v. Sprint Commc'ns of Virginia*, 715 F.3d

6

In February 2014, the SDPUC held a hearing on NAT's application for a certificate of authority. *Id.* at ¶ 51. At this hearing, a long-time Sprint employee testified as a representative of Sprint and expert witness. *Id.* On May 13, 2014, the SDPUC voted to approve NAT's certificate of authority. *Id.* at ¶ 54. In a subsequent order, the SDPUC issued its findings of fact and conclusions of law. *Id.* Among them, the SDPUC rejected several reasons for the denial of NAT's application that Sprint advanced. *Id.* The SDPUC's decision was not appealed. *Id.* On September 10, 2014, NAT filed its first amended counterclaim. Docket 172.

## II.   Statute of Limitations

Sprint seeks dismissal of Counts I and II of NAT's amended counterclaim "to the extent that those counts seek recovery of bills that were billed before August 11, 2012, and came due on or before September 10, 2012." Docket 182 at 1. Sprint argues that the collection of those sums is barred by the two-year statute of limitations applicable to carriers such as NAT. And Sprint contends that NAT's amended counterclaim does not relate back to NAT's original counterclaim. Thus, NAT can only attempt to recover for amounts billed from August 11, 2012, onward on Counts I and II.

"As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the [counterclaim] itself establishes the defense.' " *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting *Jessie v. Potter*, 516 F.3d 709,

_____

501 (4th Cir. 2013).

713 n.2 (8th Cir. 2008)). Whether the counterclaim itself establishes the statute of limitations defense is determined by examining only the face of the counterclaim and those matters outside the counterclaim that are not in dispute. *Jenisio v. Ozark Airlines, Inc. Ret. Plan for Agent and Clerical Emps.*, 187 F.3d 970, 972 n.3 (8th Cir. 1999) ("A district court may consider documents on a motion to dismiss where . . . the parties do not dispute the actual contents of the documents.").

Federal law provides for a two-year statute of limitations on actions by telecommunications carriers to recover their unpaid charges. 47 U.S.C. § 415(a). The limitations period begins when the cause of action accrues. *Id.* The FCC has interpreted this section to mean that a cause of action accrues upon the "discovery of the right or wrong or of the facts on which such knowledge is chargeable in law." *In the Matter of AT&T Co. v. Northwestern Bell Tel. Co.*, 5 FCC Rcd. 143, 148 (1990) (footnote omitted). Several courts have followed the FCC's interpretation and concluded that when a carrier seeks recovery for unpaid access services, the limitations period begins to run when payment for those services becomes due. *Cf. MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1100-01 (3d Cir. 1995); *accord Cent. Scott Tele. Co. v. Teleconnect Long Distance Servs. & Sys Co.*, 832 F. Supp. 1317, 1320-21 (S.D. Iowa 1993).

Sprint contends that NAT's tariff number three provides that NAT's monthly bills are due 30 days after a bill is issued. And relying on *MCI*, Sprint argues NAT's cause of action would likewise accrue after those 30 days had

passed. Therefore, NAT's cause of action to recover on bills that came due before September 10, 2012, would be outside the two-year statute of limitations. NAT responds that Counts I and II do not plead breaches of specific tariffs and are not facially barred by the two-year statute of limitations. Alternatively, NAT argues that its amended counterclaim relates back to the date of its original counterclaim. Assuming Sprint is correct and that NAT's amended counterclaim is facially vulnerable to a statute of limitations defense because it seeks recovery of access service bills that came due prior to September 2012, the question becomes whether NAT's amended counterclaim nonetheless relates back to its original counterclaim.

An amended pleading relates back to the date set out in the original pleading when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). "The basic inquiry is whether the amended [counterclaim] is related to the general fact situation alleged in the original pleading." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996) (citing *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1283 (8th Cir. 1988)). Because "the purpose of Rule 15(c) is to permit cases to be decided on their merits," the rule "has been liberally construed." *Id.* (internal citations omitted).

> [C]ourts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading. Only if the original pleading has performed that function . . . will the amendment be allowed to relate back to prevent the running of the limitations period in the interim from barring the claim or defense.

9

6A Charles Alan Wright, et al., *Federal Practice and Procedure*, § 1497 (3d ed.) (hereinafter Wright & Miller). Thus, "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Maegdlin v. Int'l Ass'n of Machinists and Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1052 (8th Cir. 2002) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 (1984)). Relation back will not be allowed, however, if "unfair surprise or prejudice" would result. *Fuller v. Marx*, 724 F.2d 717, 720 (8th Cir. 1984).

NAT's original counterclaim sought recovery for the access service fees that it billed to Sprint and Sprint had not paid for since March 2010. At that time, NAT estimated that it had been damaged by approximately $600,000, and additional damages were accruing daily as Sprint continued to withhold payments for the access services NAT was still providing. Counts I and II referenced the amounts that Sprint owed under the "applicable tariffs" and the "filed tariffs" that NAT had with the FCC.

NAT's amended counterclaim reiterated that Sprint began refusing to pay for access services in March 2010. NAT added that Sprint also continued to withhold payment for access services after NAT's most recent tariff was filed with the FCC in August 2011. To this day, NAT alleges that Sprint has still refused to pay its bills. NAT now estimates that its damages exceed $2 million, and that additional damages are again accruing because Sprint continues to withhold payment for NAT's access services. Counts I and II of the amended

10

complaint again reference the amounts due pursuant to the "applicable tariffs" and the "filed tariffs" NAT had with the FCC.

Sprint argues that NAT's amended counterclaim does not relate back because, as amended, Counts I and II now seek recovery arising from a different transaction or occurrence than that set out in NAT's original counterclaim. Specifically, NAT's tariff number three was filed with the FCC and became effective after NAT filed its original counterclaim. And according to Sprint, tariff number three canceled and repealed NAT's prior tariff. Sprint argues that NAT is attempting to recover under a different contract (NAT's tariff number three) than before, which also involves a different period of time, a different duty, a different breach, and a different claim for damages.

Although Sprint contends that the filing of a new tariff effectively caused NAT to assert a new claim that arises out of a different transaction, "[i]t is the facts well pleaded, not the theory of recovery or legal conclusions that state a cause of action and put a party on notice." *Maegdlin*, 309 F.3d at 1053 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999) (noting that even a change in legal theory "is not fatal to [Rule 15(c)(2)'s] application."). Instead, the "general fact situation alleged in the original pleading" was that Sprint has refused and is still refusing to pay for the access services that NAT provides. *See Alpern*, 84 F.3d at 1543. The same is true for Counts I and II of NAT's amended counterclaim. Thus, it is the fact that Sprint withheld these payments that underpins NAT's cause of action and puts Sprint on notice that NAT was seeking recovery of past, present, and future unpaid access fees as they

11

accumulate. And Sprint has made no showing that it was unfairly surprised that NAT would include the more recent unpaid bills issued under its third tariff as damages or that Sprint's defenses for nonpayment would be prejudiced by allowing the amended counterclaim to relate back. *See Alpern*, 84 F.3d at 1543-44; *Fuller*, 724 F.2d at 720-21. Rather, Sprint was "given all the notice that statutes of limitations were intended to provide." *Maegdlin*, 309 F.3d at 1052. Thus, Counts I and II of NAT's amended counterclaim relate back to its original counterclaim, and the motion to dismiss in part is denied.

## III. Declaratory Relief

Next, Sprint requests dismissal of Count V of NAT's amended counterclaim, which seeks declaratory relief under the doctrine of collateral estoppel. Specifically, Count V asserts that the arguments Sprint has advanced were previously raised by Sprint and rejected in the SDPUC proceeding and/or in *Central Telephone*. Thus, NAT alleges as a freestanding claim that Sprint is collaterally estopped from re-litigating those issues in this proceeding. *Id.* NAT seeks a declaratory judgment that (1) the grounds advanced by Sprint to justify its refusal to pay NAT for access services have no merit; and (2) Sprint's failure to pay for those access charges arose from its company-wide plan to cut costs, rather than a bona fide dispute put forth in good faith. Sprint contends dismissal is proper because the decision to grant declaratory relief resides within the court's discretion, and the court should simply deny NAT's request and dismiss Count V. Alternatively, Sprint argues that NAT has insufficiently pleaded facts to support the doctrine of collateral estoppel.

12

The Declaratory Judgment Act provides that courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). And "[the Federal Rules of Civil Procedure] govern the procedure for obtaining declaratory judgment[.]" Fed. R. Civ. P. 57. "Thus, the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions." Wright & Miller § 2768; *see also Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (concluding the plaintiffs' request for a declaratory judgment did not comply with the pleading standards of Rule 8 and dismissal was therefore proper).

Generally, collateral estoppel is an affirmative defense. *See, e.g.*, *Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d 1091, 1093 (8th Cir. 1996); *Sartin v. Comm'r of Pub. Safety of State of Minn.*, 535 F.2d 430, 433 (8th Cir. 1976). NAT, however, advances its collateral estoppel argument as a claim for relief. *See* Docket 190 at 17-18 (arguing "The Amended Complaint States a Claim for Collateral Estoppel" and that Count V "alleges all five of the required elements for collateral estoppel."). The court is not aware of either a federal or South Dakota cause of action for collateral estoppel. And NAT has not identified any caselaw that has recognized a cause of action entitled collateral estoppel. A declaratory judgment is itself a remedy, not a cause of action. *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007); *Wolff v. Bank of New York Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014). Consequently, Count V of

13

NAT's amended counterclaim will be dismissed for failure to state a claim upon which relief can be granted.

NAT will not, however, be foreclosed from litigating the merits of its collateral estoppel defense as it may apply to Sprint's claims. Thus, the court expresses no opinion on the merits of NAT's collateral estoppel defense at this time.

## IV.    Abuse of Process Claim

Finally, Sprint seeks dismissal of Count VI of NAT's amended counterclaim that alleges Sprint has abused the legal process. Because the court sits in diversity, the substantive law of South Dakota governs the analysis of NAT's abuse of process claim. *See White v. Lavigne*, 741 F.2d 229, 230 (8th Cir. 1984). South Dakota has adopted the abuse of process definition set forth in section 682 as well as comments (a) and (b) of the Restatement (Second) of Torts. *Brishky v. State of South Dakota*, 479 N.W.2d 489, 493 (1991). The Restatement provides that, "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts, § 682 (1977). The significance of the word "primarily" is that,

> For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

14

*Id.* cmt. b. Thus, the elements of this tort are "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Brishky*, 479 N.W.2d at 494 (citations omitted).

Considering those elements and construing NAT's allegations and reasonable inferences in NAT's favor, the amended counterclaim asserts that Sprint has engaged in company-wide cost cutting efforts. As part of that goal, Sprint sought to delay or avoid altogether its obligation to pay for the access services that NAT has provided by initiating and then delaying the resolution of this litigation as long as possible. Sprint further delayed payment during the FCC referral process and Sprint intervened in the SDPUC proceeding to protract NAT's collection efforts or to put NAT out of business during the duration of those proceedings. While this case awaits final resolution, NAT alleges that Sprint has and will continue to receive access services from NAT without paying for them.

Sprint argues NAT's claim must be dismissed because there is no plausible basis to support NAT's contention. Sprint asserts that this court's prior rulings–for example, the decision to refer several issues in this case to the FCC that were similar to issues from other telecommunications cases that had also been referred–demonstrate the legitimacy of Sprint's intentions. Sprint also cites several cases from the Supreme Court of South Dakota in support of its position that dismissal in these circumstances is warranted.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a claim, as opposed to its merits. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872,

15

876 (8th Cir. 2010). As the Eighth Circuit has recently stated, "[t]he essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.' " *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Twombly*, 550 U.S. at 556 (citation omitted). Sprint's arguments attempt to show that NAT cannot succeed on the merits of its claim by disputing whether in fact Sprint used any legal process for an improper purpose. *See, e.g.*, Docket 182 at 19 (". . . but this court can hold as a matter of law that cost consciousness is not an improper purpose."). Consequently, Sprint's contentions are more appropriately raised in a motion for summary judgment rather than in a motion to dismiss. Furthermore, the South Dakota cases that Sprint cites in support of its arguments are cases where summary judgment on an abuse of process claim was granted, not where a motion to dismiss was granted. *See Specialty Mills, Inc. v. Citizens State Bank*, 558 N.W.2d 617, 624 (S.D. 1997) ("Therefore, summary judgment was properly granted on this issue."); *Miessner v. All Dakota Ins. Assocs, Inc.*, 515 N.W.2d 198, 205 (S.D. 1994) ("Therefore, the trial court's grant of summary judgment as to abuse of process is affirmed."). Here, however, the court's inquiry is whether NAT sufficiently pleaded a claim upon which relief can be granted, giving Sprint notice of the nature and grounds upon which it rests. Accepting

16

NAT's factual allegations as true and construing all reasonable inferences in its favor, the court concludes NAT has sufficiently pleaded its abuse of process claim.

## CONCLUSION

Counts I and II of NAT's amended counterclaim relate back to NAT's original counterclaim and are not partially barred by the statute of limitations. Count V of NAT's amended counterclaim is dismissed. Count VI of NAT's amended counterclaim sufficiently states a claim for abuse of process. Accordingly, it is

ORDERED that Sprint's motion to dismiss (Docket 181) is denied in part and granted in part.

Dated April 1, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE