UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | 4:10-CV-04110-KES |
| Plaintiff, | |
| vs. | DETERMINATION OF REASONABLE ATTORNEYS' FEES |
| CROW CREEK SIOUX TRIBAL COURT, NATIVE AMERICAN TELECOM, LLC., and B. J. JONES, in his official capacity as special judge of Tribal Court; | |
| Defendants. | |

In this court's February 16, 2016 Memorandum Opinion and Order (Docket 281), the court awarded plaintiff, Sprint Communications Company, damages on its Count 1 against defendant, Native American Telecom (NAT). The court also held that Sprint was entitled to reasonable attorney's fees under 47 U.S.C. § 206. Docket 281 at 10. Sprint filed a Motion to Determine Reasonable Attorney's fees. Docket 326. NAT filed a Memorandum opposing Sprint's motion. Docket 337.

**FACTS**

The facts of this case are more fully set forth in the court's August 7, 2015 order granting in part and denying in part cross motions for summary judgment from both parties. *See* Docket 250. But a short summary of the facts are as follows:

1

Sprint provides nationwide long-distance telephone services and is known under the telecommunications regulatory framework as an interexchange carrier (IXC). Sprint delivers long-distance calls to a local exchange carrier (LEC) for termination to end-users. Under the FCC's current regulatory framework, Sprint pays the LEC a terminating access charge based on the LEC's interstate access tariff, which is filed with the FCC.

In October 2008, the Crow Creek Sioux Tribal authority authorized NAT to provide telecommunications service on the Crow Creek Reservation subject to the tribe's laws. Under the 2008 approval order, NAT began to operate as an LEC. NAT also operates a free conference calling system (used for conference calling, chat-lines, and similar services) in connection with Free Conferencing Corporation (Free Conferencing). A party using NAT's services does not pay NAT for the conference call, but rather is assessed charges by the party's telecommunications provider. NAT then bills the telecommunications provider an access fee as defined in its interstate tariff. NAT's access charges, which were billed to Sprint for conference calls, are at issue here.

After paying two of NAT's bills for charges connected to conference calls, Sprint ceased paying NAT's terminating access tariffs because Sprint believed that NAT was involved in a traffic-pumping scheme, otherwise known as access stimulation, to generate traffic from free conference calls and chat services. On August 16, 2010, Sprint filed suit against NAT alleging a breach of the Federal Communications Act (FCA) and a state-law unjust enrichment claim. Docket 1.

On March 8, 2011, NAT amended its answer and asserted counterclaims against Sprint alleging a breach of contract and a collection action under its tariffs, a breach of implied contract resulting from a violation of its tariffs, and a quantum meruit/unjust enrichment claim. NAT also sought declaratory relief. Docket 99. On February 22, 2012, this court granted Sprint's then-pending motion to stay this proceeding and referred three issues to the FCC for resolution. Docket 141 at 25. This court also directed the parties to issue periodic updates describing the status of the FCC proceeding. Because of the limited progress on the FCC referral, a telephonic status conference was held on July 23, 2014. *See* Docket 164. During the status conference, the court proposed entering an order that would lift the stay, withdraw the issues that had been referred to the FCC, and establish deadlines for the parties to amend the complaint, counterclaims, and to file any motions to dismiss. Docket 169 at 12. The court also stated that it would rule on any motions to dismiss based on a statute of limitations defense and that a new referral of issues to the FCC could then be discussed. *Id.* With the parties in agreement, a formal order was issued that same day. *See* Docket 168.

On February 26, 2016, the court awarded Sprint monetary relief on Count I of Sprint's complaint. Docket 281. Because Sprint was awarded monetary damages on Count I, the court determined that Sprint was entitled to an award of reasonable attorney's fees. *Id.* at 10. A partial judgment in the amount of $29,565.35 was entered by the court in favor of Sprint on March 17, 2016. Docket 288. On August 4, 2016, the court entered judgment against NAT

and in favor of Sprint on the remaining claims. Docket 325. Sprint used Briggs

and Morgan, P.A. (Briggs) as outside counsel on this case. Docket 330 at 2.

Briggs is a Minneapolis based firm. Docket 327 at 6. Sprint also retained

Tommy Tobin, a South Dakota attorney, to assist on the case. Docket 329 at 2.

## DISCUSSION

Sprint requests a total of $690,617.25 in attorney's fees for 2,056.85

hours spent on this litigation. Docket 327 at 2. Sprint contends that this award

is the result of a reasonable number of hours spent on the litigation multiplied

by a reasonable hourly rate. *Id.* NAT acknowledges that Sprint is entitled to

attorney's fees, but alleges that it must apportion its fees to work done solely

on Count I in its Complaint. Docket 337 at 12. Thus, NAT believes that Sprint

should only be awarded $10,000 in attorney's fees. *Id.* at 14.

## I.    Whether Sprint can only recover fees related to Count I.

NAT first objects to Sprint's requested attorney's fees because it argues

that Sprint may only recover attorney's fees related to Count I. This court

found that Sprint is entitled to an award of attorney's fees under 47 U.S.C.

§ 206. Docket 281 at 10. Section 206 of the Communications Act provides:

> In case any common carrier shall do, or cause or permit to be
> done, any act, matter, or thing in this chapter prohibited or
> declared to be unlawful, or shall omit to do any act, matter, or
> thing in this chapter required to be done, such common carrier
> shall be liable to the person or persons injured thereby for the full
> amount of damages sustained in consequence of any such
> violation of the provisions of this chapter, together with a
> reasonable counsel or attorney's fee, to be fixed by the court in

4

every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206.

Section 206 states that, to be entitled to attorney's fees, a party must be an injured party and the party can only seek attorney's fees on a "case of recovery." To be an injured party within the meaning of § 206, a party must plead a violation of the FCA and recover damages on its claim under the FCA. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 250-51 (2d. Cir. 2001); *Swain v. AT&T Corp.*, No. 3:94-cv-1088-D, 1997 WL 573464, at *1-2 (N.D. Tex. Sept. 9, 1997); *Am. Tel. & Tel. Co. v. United Artists Payphone Corp.*, 852 F.Supp. 221, 225 (S.D.N.Y. 1994). The definition of an injured party within the meaning of the FCA originates from past decisions relating to the Interstate Commerce Act. *AT&T*, 852 F.Supp. at 223. Because the FCA was modeled closely after the Interstate Commerce Act,[1] courts rely on past decisions that construe the Commerce Act to guide their interpretation of the FCA. *Id.*

---

[1] The District Court for the Southern District of New York compared the similarities of the FCA and the Interstate Commerce Act in *AT&T v. United Artists*, 852 F. Supp. 221, 223 (S.D.N.Y 1994).

> Similar to former § 9 of the Interstate Commerce Act, § 207 of the Communications Act provides that a party may bring either an administrative proceeding or a suit in federal court. Similar to former § 16 of the Interstate Commerce Act, § 407 of the Communications Act provides that if a party is awarded damages in the administrative proceeding, such party may enforce the award in federal court. Finally, similar to former § 8 of the Interstate Commerce Act, § 206 of the Communications Act authorizes the award of damages and attorney's fees.

*Id.* (citations omitted).

In 1978, Congress restated the Commerce Act to clarify that an award for attorney's fees was only available when there had been an award for damages. *Id.* at 225. Other courts, including this one,[2] have applied that decision by Congress to Section 206 of the FCA and concluded that even where a party is successful on its claims, it cannot recover attorney's fees if it has not recovered damages on those claims. *Id.* at 225. Here, Sprint is an injured party only as to Count I because NAT engaged in unlawful practices under § 201(b) and the court awarded Sprint $29,170.27 in damages relating to Count I. *See* Docket 281 at 10. This is the only claim on which Sprint was awarded money damages.

Second, § 206 states that an injured party may only recover for attorney's fees related to its case of recovery. A case of recovery under the FCA exists where a party is awarded monetary damages. *AT&T*, 852 F.Supp. at 225. Again, this reasoning stems from past interpretations of the Interstate Commerce Act. The Supreme Court made it clear that the Commerce Act only authorized an award of attorney's fees that are incident to an award of damages in a court proceeding brought under the Act, and a party may not recover for time spent in administrative proceedings. *Id.* at 224-25 citing to *Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 433 (1915) (holding that the Commerce Act only authorizes an award of attorney's fees that are incident to an award of damages in a court proceeding that is brought under the Act, and

---

[2] *See Sancom, Inc. v. Sprint Commc'ns Co. P'ship*, No. CIV. 07-4107-KES, 2012 WL 2449934, at *1 (D.S.D. June 27, 2012).

a party may not recover for time spent in administrative proceedings). Thus, it would run counter to the purpose of § 206 to limit those who qualify as an injured party to those parties who were awarded damages under the act, but then award attorney's fees attributable to claims that were not brought under the act and that did not result in a damages award. Because Sprint only recovered damages from a violation of the FCA as alleged in Count I, Sprint's award of attorney's fees are limited to work attributable to Count I.

Sprint contends that NAT's argument that Sprint may only be awarded attorney's fees where it was awarded damages is contrary to the case law regarding attorney's fees provisions. *See* Docket 338 at 3. But Sprint relies on case law where the court was interpreting provisions awarding "prevailing parties" attorney's fees under civil rights statutes. The attorney's fee provision here is distinguished from the "prevailing party" language present in civil rights statutes because of the different public policy reasons behind the provisions. For example, in *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 576 (8th Cir. 2006), an employee was a "prevailing party" under the Equal Pay Act against her employer, and the employer appealed the amount awarded in attorney's fees. The Eighth Circuit Court of Appeals stated that it does not tie the award of attorney's fees to the amount of damages awarded because it would discourage attorneys from litigating important civil rights issues that have small monetary damages. *Id.* at 581. In contrast, the Supreme Court of the United States stated that the award for attorney's fees under the Interstate Commerce Act was tied to an award of damages because the purpose of the

7

attorney's fee provision is to require the carrier to incur "the cost and expenses entailed by a failure to pay without suit." *Meeker*, 236 U.S. at 336. Thus, a party may only recover attorney's fees under § 206 for time attributable to successful claims under the FCA that resulted in an award of damages.

The court will now apply these legal conclusions to Sprint's request for attorney's fees. On February 22, 2012, this court entered an order staying further proceedings in this case and referred the action to the Federal Communications Commission. Docket 141. This court did not lift the stay until July 23, 2014. Docket 168. Because the matter was stayed and referred for an administrative proceeding, Sprint may not recover for attorney's fees billed during that time. Sprint may not recover attorney's fees for time it spent drafting its motion to stay and its request for referral because it was time directly related to seeking relief from an administrative agency. Thus, the court will not award fees billed during the stay or for time spent drafting the relevant motions. Also, Sprint may not recover fees related to its motions for a TRO or a preliminary injunction because these motions seek injunctive relief and Sprint could not be awarded any monetary damages related to those motions. But the court will award Sprint attorney's fees related to preparing its complaint and amended complaint and for discovery prior to February 22, 2012, because Sprint needed the results of its discovery requests to draft its motion for summary judgment on Count I.

On September 15, 2015, the court held a status conference to determine how the court would proceed with litigation. During that conference, the parties agreed that the Count I issue could be resolved by the filing of a "short motion for judgment" and that nothing needed to be tried in relation to Count I. *See* Docket 254 at 13. The court scheduled a trial date for January 19, 2016, which was later moved to April. Docket 253; Docket 267. Thus, much of the time spent between September 15, 2015, and March 17, 2016, was in preparation for the trial and not attributable to Sprint's Count I. The court finds that Sprint may receive attorney's fees for time billed in relation to briefing the issues of prejudgment interest, discussing settlement, and drafting its motion for summary judgment (Docket 258) on Count I. But Sprint is not entitled to attorney's fees attributable to time preparing for trial on the remaining claims.

On March 17, 2016, the court entered a partial judgment awarding Sprint $29,565.35 on Count I of the complaint. Because time spent on the litigation after March 17, 2016, was in pursuit of declaratory relief as opposed to monetary relief, Sprint is not entitled to recover any attorney's fees billed for time after March 17, 2016. A chart detailing the approved hours is attached to this opinion as Attachment 1. Thus, the court will determine the lodestar amount and eliminate any fees that are not attributable to Count I.

## II.     Whether the rate and the hours spent on litigation are reasonable.

### A.     Lodestar Method

The Supreme Court of the United States has made it clear that the lodestar method is the preferred method for calculating reasonable attorney's fees under federal fee-shifting statutes. *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 556 (1986)(using lodestar method to calculate attorney's fees under § 304(d) of the Clean Air Act); *City of Burlington v. Dague*, 505 U.S. 557, 557 (1992)(using lodestar method to calculate reasonable attorney's fees under the Clean Water Act and the Resource Conservation and Recovery Act). Where Congress has authorized an award of attorney's fees to a prevailing party, the court should "determine 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' "*Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This formula results in what is called the "lodestar," which the court presumes is a reasonable fee. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988).

When setting the reasonable number of hours and reasonable hourly rate, the court should consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether

the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 n.3 (1983). After determining the lodestar, "there remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results' obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

### 1.   Reasonable hourly rate.

The first phase of the lodestar analysis requires the court to determine the reasonable hourly rate for the attorney's services. *Hensley*, 461 U.S. at 433. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). The fee applicant has the burden to show that the requested rate is reasonable and consistent with rates within the community "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Evidence of an attorney's customary rate is relevant to determining a reasonable fee. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002).

"In a case where the plaintiff did not use local counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of [its] diligent, good faith efforts, [it] was unable to find local counsel able and willing

11

to take the case." *Emery*, 272 F.3d at 1049 (citing to *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982)(en banc)). The district court is "intimately familiar" with its local bar and is in a position to determine whether plaintiff could have found in-state counsel. *Emery*, 272 F.3d at 1049 (quoting *Moore v. City of Des Moines*, 766 F.2d 343, 345-46 (8th Cir. 1985)). Sprint requests the following hourly rates[3]:

| Attorney Schenkenberg (MN) | 15-20 years experience | $335-380 |
| Attorney Joseph (MN) | 1-5 years experience | $200-$240 |
| Attorney Swenson (MN) | 3-5 years experience | $175-$200 |
| Attorney Knudsen (MN) | 35-40 years experience | $415 |
| Attorney Tobin (SD) | 40+ years experience | $275 |
| Paralegal Wold (MN) | 9-14 years experience | $160 |

The requested rates for the Minnesota-based attorneys and paralegal are higher than would be typically rewarded to a South Dakota-based attorney. But the court finds that it was necessary for Sprint to hire out-of-state counsel.[4] Sprint explained that many of the telecommunications attorneys in South Dakota were conflicted out of the litigation. Docket 330 at 3-5; Docket

---

[3] *See* Docket 328 at 4-5; Docket 329 at 2; Docket 331 at 4-5.
[4] Sprint provided a chart detailing how several South Dakota telecommunications attorneys were conflicted out of this litigation. Docket 330 at 3-5. For example, Sioux Falls, South Dakota attorneys Cheryle Gering and Kathryn Ford initially appeared on Sprint's behalf but soon after discovered a conflict. Rapid City, South Dakota attorney Talbot Wieczorek had been retained by Sprint but he had previously represented NAT in another matter. Other South Dakota attorneys such as Thomas Welk, Meridith Moore, and Ryan Taylor, to name a few, were all conflicted out of this litigation.

327 at 7-8. And this litigation required knowledge of Indian law and telecommunications law—both of which are specialized areas. Thus, it was necessary for Sprint to use a Minneapolis-based firm, and it is reasonable to apply Minneapolis-based rates.

The District of Minnesota has recently found the following rates reasonable in its district: $495 an hour for an attorney with 23 years' experience, $285 an hour for an attorney with 6 years' experience, $225 an hour for an attorney with 2-3 years' experience, and $195 an hour for a paralegal with 38 years' experience. *See Hall v. Sebelius*, Civ. No. 13-295 (JRT/LIB), 2016 WL 424965, at *5 (D. Minn. February 3, 2016); *Rosen v. Wentworth*, 13 F. Supp 3d 944, 951 (D. Minn. 2014); *Owner Operator Indep. Drivers Ass'n, Inc. v. Supervalu Inc.*, No. 05-2809, 2012 WL 6760098, at *6-*7 (D. Minn. Sept. 30, 2012). NAT did not argue in its opposition to Sprint's motion that Sprint's requested rates were unreasonable (Docket 337), and the court finds that all of Sprint's proposed Minnesota rates are reasonable. Attorney Schenkenberg had 15 years of experience at the start of this litigation and requested $335 an hour for work completed during that time going up to $380 an hour over the course of 5 years. That is well below the $495 an hour that the District of Minnesota has previously approved for an attorney with a similar number of years of experience. Similarly, Attorney Knudsen had 35 years of experience at the start of this litigation and is a former United States Supreme Court law clerk. Sprint requests $415 an hour for the entirety of the

litigation, which is well below the $495 previously awarded by the District of Minnesota for an attorney with less experience.

Attorney Joseph had 1-5 years of experience during the litigation, and Sprint requests a rate of $200-$240 an hour for her. Docket 328 at 4-5. That is consistent with the District of Minnesota's previous grant of $225 an hour for an attorney with 2-3 years of experience and $285 for an attorney with 6 years of experience. Similarly, Attorney Swenson had 3-5 years of experience during this litigation, and Sprint requests that she be compensated at a rate of $175-$200 an hour, (Docket 331 at 4), which is less than what has previously been granted to attorneys with similar experience. Finally, Sprint requests $160 an hour for Paralegal Wold who had 9-14 years of experience during this litigation. Docket 331 at 4-5. The District of Minnesota found that it was reasonable to pay a paralegal with 38 years of experience $195 an hour. *Hall*, 2016 WL 424965, at *5. Even though Paralegal Wold had less experience than the other paralegal, the court finds that the $160 an hour is a reasonable fee because it is still significantly lower than the $195 an hour rate, and Paralegal Wold was the only paralegal who worked closely on this case.

Finally, the court addresses Attorney Tobin's legal fees. Because Tobin is an attorney in South Dakota, the court determines his fee based on a reasonable rate in the District of South Dakota. This court has previously held that a reasonable rate within the District of South Dakota is $135-$210 depending on the experience of the attorney. *See Bishop v. Pennington Cty.*, Civ.

No. 06-506-KES, 2009 WL 1364887, *5 (D.S.D. May 14, 2009)(finding that $180 was a reasonable rate for experienced partners); *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *24 (D.S.D. March 12, 2010) (finding $210 was a reasonable rate for an attorney with substantial experience); *Jadari v. Shiba Investments, Inc.*, Civ. Nos. 06-5012-RHB, 06-5020-RHB, 06-5037-RHB, 06-5050-RHB, 2008 WL 5100812, at *8-*11 (D.S.D. Dec 3, 2008)(finding that $175 was a reasonable rate for experienced partners). Attorney Tobin has 40 plus years of experience, and Sprint requests a $275 an hour rate. Docket 329 at 2. The court finds that Sprint's request for Attorney Tobin is unreasonable and should be lowered to $220 an hour. The court believes that $220 is a reasonable rate because it is consistent with the court's prior decisions but accounts for the time that has passed since those decisions.

### B.     The number of hours spent on the litigation.

Sprint requests that it be compensated for a total of 2,056.85 hours associated with this lawsuit—1,883.5 hours are billed by Briggs and Morgan, P.A. and 173.35 hours billed by Tobin Law. Docket 327 at 4. NAT contends that the number of hours Sprint proposed should be limited to time spent on Count I. The court agrees with NAT. After reviewing Sprint's billing statement, the court finds that 98.7 hours are attributable to Count I.[5] After adjusting for Mr. Tobin's hourly rate, the lodestar is $36,798. The court presumes the lodestar to be reasonable. *McDonald*, 860 F.2d at 1458.

---

[5] The court has attached a chart marked as Attachment 1 detailing what hours it finds are attributable to Count I.

### C.    The *Johnson* factors.

Next, the court must determine whether any of the *Johnson* factors
warrant a decrease or increase in the lodestar. Sprint states in its motion that
it does not seek an enhancement based on the *Johnson* factors, but that the
factors weigh in favor of its requested fee. Docket 327 at 9. The court partially
agrees. Several factors weigh in favor of Sprint such as: the novelty and
difficulty of the question; the skill requisite to perform the legal service; the
results obtained; and the experience, reputation, and ability of the attorneys.[6]
Also, Sprint was successful on its Count I, and the "results obtained" factor is
"crucial where a plaintiff is deemed 'prevailing' even though he succeeded on
only some of his claims for relief." *Hensley*, 461 U.S. at 434.

As discussed above, under § 206 a prevailing party may only recover for
attorney's fees associated with a case for recovery, so Sprint may only recover
fees associated with Count I. *AT&T*, 852 F. Supp. at 225. While several other
issues in this case had a significant amount of money at stake, only
$29,170.27 was at stake for Count I. Thus, the award in attorney's fees must
reflect the award in damages for Count I based on awards in similar cases. *Id.*
Thus, weighing all the *Johnson* factors and giving special weight to the "results
obtained" factor, the court finds that the lodestar is reasonable in relation to

---

[6] The court acknowledges and considers that this case was a novel issue that
involved an understanding of telecommunications regulations, technology, and
Indian Law. The court also acknowledges, as discussed in Section II.A.1, that
the attorneys involved in this case were highly qualified and experienced.

the amount involved, the experience level of each attorney and paralegal, and the novelty of the issue.

## CONCLUSION

It is ORDERED that Sprint's motion for attorney's fees (Docket 326) is granted in the amount of $36,798.

DATED March 30, 2017.

BY THE COURT:

*/s/ Karen E. Schreier* _____
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

17